## Charles J. F. Eastman & another *vs.* Joseph Eveleth.

When attached property is sold before judgment, under the provisions of the Rev. Sts. *c.* 90, § 57, it is not essential to the validity of the sale, or to the preservation of the attachment, that a return of the sale should be made on the original writ.

Where several creditors attach the property of their debtor, and he and they consent in writing to the sale thereof, and on the day appointed by the officer for the sale, other creditors cause him to attach the same property, and forbid him to pay the proceeds thereof to the first attaching creditors, but orally consent that he may proceed in the sale ; they cannot be permitted, in a suit by them against the officer for not paying to them the proceeds of the sale, to allege that the sale was made without the written consent of the debtor and of all the attaching creditors.

When attached property is sold before judgment, by consent of parties, and the money arising from the sale is in the attaching officer's hands, a delivery to him of the execution which issues on a valid judgment afterwards recovered, with a direction to satisfy it from such money, is tantamount to a levy ; and if so deliv- ered before the first publication of the messenger who is appointed, under *St.* 1838, *c.* 163, to take possession of the judgment debtor's estate, his assignees under that statute have no claim on the officer for such money, although he has made no return on the execution, nor paid the money to the judgment creditors.

An agreement made by a debtor, whose property is attached by several creditors, that judgment shall be rendered against him, in favor of the first attaching creditor, on the first day of the term to which the several writs of attachment are returnable, is not void by *St.* 1838, *c.* 163, as against his other creditors, though the first attaching creditor's demand is greater than the value of all the property attached; unless such agreement is made by the debtor in contemplation of becoming insolvent and obtaining a discharge under the provisions of that statute.

Assumpsit on the money counts, to recover of the sheriff of Suffolk for an alleged default of his deputy, Charles D. Coolidge. This action, and two others brought by James Bart- lett and John T. Bartlett against the same defendant, for a de- fault of the same deputy, (*post.* 149) were severally tried at November term 1840. As the leading facts were the same in the three cases, the reports thereof, made by the chief justice, before whom the trials were had, are here combined : On the 3d of Dec. 1839, James Bartlett sued out a writ against George W. Bartlett, returnable to the January term of the court of com-

mon pleas, on which the officer was directed to attach property sufficient to cover $700, with interest and costs.   On the same day, John T. Bartlett and James Bartlett, Jun. severally sued out writs against said George W. with a direction on the writ of said John T. to attach property ; and at the same time George W. gave to Messrs. Lorings & Dehon, the attorneys who made the writs against him, an authority to appear in the three suits, and to have the same defaulted and judgment rendered as of the first day of the term.   These writs were delivered to Charles D. Coolidge, a deputy of the sheriff, and were all served on the 5th day of December, by attaching sundry goods of the defendant contained in stores occupied by him in Commercial and Salem Streets. Shortly after, a paper was also executed of the following tenor : " Boston, December 1839.   To Charles D. Coolidge, Esq. The parties to the suits, James Bartlett, John T. Bartlett and James Bartlett, Jun. vs. George W. Bartlett, request that the property attached by you be sold in the usual manner at auction.

" Lorings & Dehon for the plaintiffs.   December 6th, agreed to by George W. Bartlett."

In pursuance of this agreement said Coolidge advertised the property for sale, and procured Edward F. Hall & Co., auctioneers, to sell the same, which they did on the 9th of December ; on which day, Upham & Eastman, seeing the advertisement, attached the said goods on a demand due to them from the said George W. Bartlett.   Certain other creditors of said George W. Bartlett also commenced suits against him on the same day, and attached the same property.   They also by a written notice forbade the officer to pay away the proceeds of the goods ; intending to contest the claims of the prior attaching creditors as fraudulent.   But these creditors, and also Upham & Eastman, orally consented that the sale should not be stopped. The actions of the Bartletts were duly entered on the first day of January term, and on the second day of the term, being the 14th day of January 1840, the defendant was defaulted in said actions, and judgments rendered against him for the plaintiffs respectively.   Executions issued thereon, on the 15th of January, and were delivered to said Coolidge on the same day.   The

judgments of James Bartlett and John T. Bartlett were greater in amount than the value of all the property that was attached.

The actions of Upham & Eastman, and of the other creditors, were duly entered at said January term of the court of common pleas, and on the 15th of January — the same day that the officer received the executions of the Bartletts — the attorney of Upham & Eastman saw the officer and forbade his paying over any moneys upon said executions, as he was about to move for the recall of the executions, and intended to contest the validity of the attachments. On the sixth day of the term, being Saturday the 18th of January, Upham & Eastman appeared in said actions of the three Bartletts against George W. Bartlett, and filed a petition to have the attachments dissolved; which petition, on the 14th of February, after argument heard before *Warren*, J., was dismissed. On the last day of the term, being the 15th of February, G. W. Bartlett was defaulted in the suits of Upham & Eastman and others against him, and judgments were rendered in the usual manner. On the 25th of January 1840, the attorneys of the Bartletts wrote to the officer, (Coolidge) demanding payment of their several executions against George W. Bartlett, from the goods attached and sold on the original writs, and offering him, if he had reasonable cause, a bond of indemnity. Receiving no answer, they wrote again on the 5th of February, expressing their surprise at the manner in which he had conducted in relation to the money in his hands on the Bartlett writs, and that they were at a loss to account for the neglect which their repeated application for an unequivocal answer had been treated ; and on the next day (the 6th) they wrote to the sheriff, stating that the officer had refused to pay over, on the executions, the moneys in his hands, the proceeds of the property attached on the writs ; that they were under the necessity of proceeding against him for that officer's default ; and that they should claim five times the lawful interest, as allowed by law. On the 15th of February, the day after the aforesaid petition of Upham & Eastman was dismissed, the attorneys of the Bartletts received a letter from Coolidge, the officer, without date, in which he says, " I have received your note

relating to Judge Warren's opinion, which settles the question. I will make up the accounts and balance the same."

On the 17th of the same February, Upham & Eastman presented their petition to a master in chancery for process against George W. Bartlett, as an insolvent debtor. The warrant of the master issued, on the same day, to the messenger, who gave notice on that day to the officer not to part with any of the property of said George W. Bartlett ; and on the next day, (the 18th) the first publication of the messenger appeared. On the 29th of February an assignment was made by the master, to Eastman & Tenney, of the property of the said George W Bartlett, which they accepted. And on the 30th day of July following, the said Eastman & Tenney, as assignees of George W. Bartlett, brought the present action against the sheriff, for. the alleged default of his deputy in not paying over to them the proceeds of the goods, sold on the 9th of December preceding, as the property of the said Bartlett.

An attempt was made on the trial, to prove that the demand of James Bartlett against George W. Bartlett was fraudulent and void as against creditors ; but the fact was not established. And in the cases of James Bartlett and of John T. Bartlett against the defendant, it was admitted that the said George W. Bartlett, on the 3d of December 1839, when the three first suits were brought against him, did not intend to apply for the benefit of the insolvent law, or to procure a discharge under the same. It was also proved, that no other executions than those of the three Bartletts had ever been delivered to the officer; and that no return had ever been indorsed by the officer on either of the three executions which were delivered to him.

The officer made no mention, in either of his returns of the aforesaid writs of attachment, that the goods, which he had attached, had been sold at auction.

This case was taken from the jury, by consent of parties, under an agreement that a nonsuit or a default should be entered, or a new trial granted, as should be decided by the whole court.

*B. Rand*, for the plaintiffs. There was no such disposition of the property in question, before the 18th of February 1840,

as prevented its passing to the plaintiffs, under the assignment made by the master in chancery. The first publication of the messenger's notice was on that day, and the assignment passed all the property then belonging to George W. Bartlett. *Briggs* v. *Parkman,* 2 Met. 266. There had been no levy on the property attached. To constitute a levy, in a case like this, there must be, at the least, some act of the officer indicating his intention to apply the proceeds towards the satisfaction of some particular judgment creditor. But here the executions remain to this day in the same state as when they were issued. There is no return nor even any minute made on them. *Westervelt* v. *Pinckney,* 14 Wend. 123. *Howe* v. *Starkweather,* 17 Mass. 243. *Wellington* v. *Gale,* 13 Mass. 483. *Davis* v. *Maynard,* 9 Mass. 242. *Perry* v. *Dover,* 12 Pick. 211. *U. States* v. *Slade,* 2 Mason, 71.

A part only of the attaching creditors assented to the sale of the property. As to the others, therefore, it was ineffectual. Besides ; there was no return made, on the writs, of the sale of the goods, and therefore there is no legal evidence that the sale was made.

The property passed to the plaintiffs, under the assignment, because the proceedings of the Bartletts, in procuring judgment, were a fraud upon *St.* 1838, *c.* 163 ; and because, if there had been a levy, then there was a transfer, in contemplation of insolvency, which was void against the assignees.

*I. J. Austin,* for the defendant. The notice given to Coolidge, by the subsequent attaching creditors, not to pay the proceeds of the attached property to those who first attached it, had no legal effect, except to put him on his guard. It left him free to use his own discretion, and he must stand or fall by his own decision in the premises. *Fairfield* v. *Baldwin,* 12 Pick. 388. *Warmoll* v. *Young,* 5 Barn. & Cres. 660. *Saunders* v. *Bridges,* 3 Barn. & Ald. 95. If the subsequent attaching creditors acquired any lien on the property, they lost it by not taking out execution within thirty days after judgment.

The first attachments were valid, even if made for the purpose of gaining a preference. *Gorham* v. *Stearns,* 1 Met. 366. *Hol-*

*bird* v. *Anderson,* 5 T. R. 238.    *Meux* v. *Howell,* 4 East, 1.
*Pickstock* v. *Lyster,* 3 M. & S. 371.    *The King* v. *Watson,* 3
·Price, 16.

Coolidge was bound to pay the first attaching creditors, upon
their demanding payment.    As the property had been converted
into money, that demand was equivalent to a seizure ; *Sheldon*
v. *Root,* 16 Pick. 567 ; and Coolidge's refusal to pay satisfied
the executions and discharged the judgment debtor.    For though
an officer is not bound to pay money collected on execution
until the return day, without a demand, yet he is bound to pay
immediately, if demand is made.    *Rogers* v. *Sumner,* 16 Pick
387.    *Bayley* v. *French,* 2 Pick. 586.    *Ladd* v. *Blunt,* 4 Mass
402.    *Wilder* v. *Bailey,* 3 Mass. 289.    *Wakefield* v. *Lithgow,*
3 Mass. 249.    *Barnard* v. *Ward,* 9 Mass. 269.    *Speake* v.
*Richards,* Hob. 206.    2 Saund. 47 *a,* *note* (1).

If payment had been made to the first attaching creditors,
upon their demand, such payment would have protected the
officer against the plaintiffs in this action.    *Sandford* v. *Nichols,*
13 Mass. 288.    *Albee* v. *Ward,* 8 Mass. 79.    *Nichols* v.
*Thomas,* 4 Mass. 232.    *Haskell* v. *Sumner,* 1 Pick. 459.
*Simms* v. *Slacum,* 3 Cranch, 306.    *Ammidon* v. *Smith,* 1
Wheat. 447 – 460.    *Austin* v. *Ward,* 1 Car. & P. 370.
*Ives* v. *Lucas,* 1 Car. & P. 7.    *Anon.* 1 Vent. 259.    *Turnor*
v. *Felgate,* T. Ray. 73.    *S. C.* 1 Lev. 95.

The officer was bound to sell the property on· the request of
the attaching creditors and the debtor.    Rev. Sts. c. 90, § 57
But whether it was legally sold or not, all the attaching creditors
have ratified the sale.    *Hewes* v. *Parkman,* 20 Pick. 90.    The
plaintiffs, by declaring against the defendant on the money
counts, admit the sale ; *Ainslie* v. *Wilson,* 7 Cow. 662 ; and as
the proceeds thereof came into the deputy's hands, *colore officii,*
he was bound to pay them over on demand, whether his return
shows or does not show that the sale was legal.    *N. Hampshire
Savings Bank* v. *Varnum,* 1 Met. 34.    His return, however,
was not defective nor irregular.    The Rev. Sts. c. 90, § 57,
do not require a minute return of an officer's doings on mesne
process

As the demand of the execution creditors upon the officer was equivalent to a seizure, the assignment to these plaintiffs, under the insolvent law, did not affect the property in the offi cer's hands. Such an assignment vacates attachments on mesne process, but not seizures on execution. *St.* 1838, *c.* 163, § 5. G. W. Bartlett committed no act of insolvency until the last day of the January term of the common pleas, 1840. If there‑ fore the officer had paid the proceeds of the attached property to the first attaching creditors, when demanded, he would have done it without notice of an act of insolvency on the part of said Bartlett, and would have been protected, even under the principles applied to the construction of the English bankrup‍ acts. *Lee* v. *Lopes,* 15 East, 230. *St. John's College* v *Murcott,* 7 T. R. 259. *Vernon* v. *Hankey,* 2 T. R. 121. *Duck* v. *Braddyll,* M'Clel. 217. *Notley* v. *Buck,* 8 Barn. & Cres. 160.

HUBBARD, J. The present and two other actions against the sheriff of Suffolk [*post.* 149] arise out of a contest between the creditors of George W. Bartlett as to the right to the pro‑ ceeds of certain goods, which were originally the property of said Bartlett, and which were sold by Charles D. Coolidge, one of the deputies of the sheriff. The plaintiffs in this case are assignees of said Bartlett, appointed under *St.* 1838, *c.* 163, and the parties in the other suits are James Bartlett and John T. Bartlett, the judgment creditors of the said George W. Bartlett ; and to one or the other of these parties the sheriff is responsible. Various questions have been presented to the court, in the argument of these cases ; the most important of which will be noticed in stating the opinion which the court has formed.

The cases in which the petition of the creditor of an insol‑ vent is the ground of a warrant to take possession of his estate are 1st, where the debtor has been arrested on mesne process in a civil action for the sum of $100 or upwards, on a demand proveable under the act, and he shall not give bail before the return day of the process ; 2d. where actually imprisoned, in a like case, on mesne process or execution, more than thirty

days ; or 3d. where his goods or estate are attached on mesne process in any civil action as aforesaid, and he shall not, on or before the last day of the term of the court to which such process is returnable, dissolve the attachment in the manner provided in the act.     *St.* 1838, *c.* 163, § 19.

The present case ranges under the third branch of the statute ; and the plaintiff must, therefore, show that the goods attached on the 3d of December 1839, at the suit of the Bartletts, remained the property of the insolvent at the time of the issuing of the commission, and in a conditon, at the first publication of the messenger, to pass under the assignment.

It was attempted, during the pendency of the actions in the common pleas, to impeach the validity of the demand upon which the action of James Bartlett was founded ; but as the attempt failed, it is not necessary to examine into that part of the case.  Indeed the point was not relied on at the hearing of the cause.  But it was contended that the return of the sheriff on the original writ, upon which the goods were attached, was defective, because there was no return of the sale of the goods at auction, and therefore no legal proof of their sale.  On looking at the statute permitting a sale of goods attached on mesne process, we are satisfied that such a return of the sale is not absolutely essential to its validity, nor required, at all events, to preserve the attachment.  The provision of the Rev. Sts. *c.* 90, § 57, is this :  " When any personal property is attached, whether on one or more writs, and the debtor and all the attaching creditors shall consent in writing to the sale thereof, the attaching officer shall sell the same, in the manner prescribed by law for selling the like property on execution ; and the proceeds of the sale, after deducting the necessary charges thereof, shall be held by the officer, subject to the attachment or attachments, and shall be disposed of in like manner as the property would have been held and disposed of, if it had remained unsold."  And in *St.* 1822, *c.* 93, § 1, of which the foregoing § 57 of *c.* 90, is a revision, we find the language a little more full, while there is no material change in the law.  That section provides " that whenever any personal property shall be attached on

mesne process, on one or more writs, and the respective parties shall express their consent in writing, that the same may be sold, *at any time before judgment,* it shall be the duty of the attaching officer to cause the same to be sold in manner provided by law for the sale of similar property on execution." It is very clear that the legislature contemplated a sale as well after the return of the writ as before, and at any time before final judgment : It is obvious, then, that a sale made after the return day could not be a part of the return upon the original writ ; and no provision being made for its being indorsed on the writ, if the sale should happen to be made, as in this case, before the return day of the writ, we must hold that such return is not essential to the validity of the sale, however discreet it might be in the officer to make a return thereof. The law requires that the sale shall be in like manner as if sold on execution, but not that there shall be a return in like manner ; nor is there any express provision for a return of the particulars on the execution. It may have been considered that as the consent of all the attaching creditors, and of the debtor himself, was required before a sale could take place, they would generally watch over their respective interests, both as to the manner of the sale and the charges attending it. But however that may be, no such return being specifically required, the return is not defective on that account, although it would be always wise for the officer to set forth his doings in his return on the original writ, if the sale is made before the return day ; and where such a sale takes place after the return of the writ, and the suit proceeds to judgment and execution, then we apprehend it will be his duty to make a detailed return of his doings upon the execution, for his own safety, and for the protection of the rights of all parties. *Baxter* v. *Rice*, 21 Pick. 199.

Again, it is said that the sale in the present case was illegal, because *all* the attaching creditors did not consent thereto in writing. Such an objection comes with an ill grace from the plaintiffs, as it appeared that Upham & Eastman desired the sheriff not to stop the sale, (as he offered to do, if they wished,) but only to retain the proceeds. But we are of opinion, that

within the meaning of the statute, *all* the attaching creditors, and the debtor, did assent to the sale. The attachments took place on the 3d of December, and two days after, all the then attaching creditors and the debtor agreed, in writing, to the sale, and requested the officer to make it. This he complied with by pursuing the requisitions of the law in regard to such sales ; and on the day of the sale, the attachments of Upham & Eastman, and others, were made ; and as they entered no protest against the officer's proceeding with the sale, though the fact was known to them, we think they cannot now be permitted to allege that the sale was not made with the consent of all the attaching creditors.

But a more serious objection is made against the right of the judgment creditors to defeat the claims of the plaintiffs under their assignment. It is alleged by the present plaintiffs, that there has been no such levy on the property of the insolvent debtor, as dissolved the attachment or prevented its passing under the assignment ; and this objection is argued with much force. The course of the argument is this ; that no act of the officer appears, by which it can be shown that he has made any levy on account of any of the executions, or any application of the funds to either execution ; that he has made no election to which of the judgment creditors he would appropriate the money ; that he has indorsed nothing on either of the executions ; that at the time of the notice to him of the assignment, he had no intention of making any appropriation of it ; that a levy cannot exist simply by operation of law, where the officer did not intend to levy ; and that the mere fact of the officer's having the money in his hands, and a delivery to him of the execution on which the property was attached, even though a demand is made upon him for payment of the money, does not constitute a levy of the execution.

It is certainly true, that to constitute a levy on the part of an officer, he must act in the premises. It is not enough for him to see the goods. To enable him to make sale of them, and apply the proceeds to the satisfaction of the writ of execution in his hands, he must take such possession of them, if they are

capable of possession, as would make him a trespasser, if he were acting without authority, and vest in him a special property. *Haggerty* v. *Wilber*, 16 Johns. 288. *Beekman* v. *Lansing*, 3 Wend. 450. *Lane* v. *Jackson*, 5 Mass. 157. *Caldwell* v. *Eaton*, 5 Mass. 404.

The reasoning of the plaintiffs' counsel would be satisfactory, and perhaps conclusive, if the goods had not been previously sold by consent of parties, under the statute authorizing the same ; but here the great difference exists, as clearly shown by the able argument of the defendant's counsel. What was the officer to do, having in his hands the money arising from the sale of the goods, when the writ of execution was given to him ? To make sale of the money would be an absurdity. *Sheldon* v. *Root*, 16 Pick. 569. To advertise for four days, that he had the money, would benefit no party. All he could do would be to pay over the amount to the judgment creditor, when the money was demanded, and at the return day return his execution to the clerk's office. The sale of the goods by him was a levy, permitted by law, in anticipation ; and the delivery of the writ of execution to him by the judgment creditor, with a direction to satisfy it out of the moneys in his hands arising from the sale of the goods, constituted, in our opinion, all the levy which the law, under the peculiar circumstances of the property, required, or which could in fact be made ; and the right of the judgment creditor to a payment of the money, after demand made, became perfected in him, and could not be defeated by any subsequent insolvency of the judgment debtor, although the sheriff had made no actual return or indorsement on the writ of execution, prior to such act of insolvency. The rights of parties do not generally depend upon the hour when an officer makes up his formal return, but upon the acts which he has done, or is contemplated in law to have done. In the present case, the attorneys of the judgment creditors delivered the writs of execution to the officer on the 15th of January, and on the 25th they made a formal demand of payment, in writing, and again on the 5th day of February. But the officer declined paying over the money, probably because of the pendency of the peti-

tion to have the attachments of the Bartletts dissolved, and their executions superseded. This petition was heard and dismissed on the 14th of February, of which fact the officer had notice ; and on the next day he addressed a note to the attorneys, stating that Judge Warren's opinion settled the question, and he would make up the accounts and balance the same. What more was necessary to be done ? The right of the judg ment creditor to maintain his action upon the non-payment of the money was established before a return of the writ of execution, and thus all property in the judgment debtor was completely terminated. *Rogers* v. *Sumner*, 16 Pick. 391. *New Hampshire Savings Bank* v. *Varnum*, 1 Met. 37. *Wilder* v. *Bailey*, 3 Mass. 294. And as he was in possession of the auctioneers' account of sales, settled on the 14th of December, and he had made up the expenses to the time of the sale, and had entered the same on the writ of James Bartlett, he had merely to cast up his fees of levy, and apportion the amount of the balance on the two executions.

But the counsel for the plaintiffs further contend, that supposing the objection to the want of a sufficient levy on the execution of the judgment creditors to be overruled, still the plaintiffs ought to prevail, because the judgments rendered in their actions were frauds upon *St.* 1838, " for the relief of insolvent debtors, and for the more equal distribution of their effects ; " and that the proceedings were for the very purpose of preventing the creditors at large from having their just share of the debtor's property The fraud upon the law, which is complained of, is this ; that prior to the last day of the term to which the writ was returnable, to wit on the second day of the term, the defendant confessed a judgment in the suits of the Bartletts against him, and suffered them immediately, that is, in twenty-four hours after, to sue out their writs of execution against him ; whereas the statute contemplated that unless an attachment was dissolved by giving security agreeably to the provision of the 20th sec tion, the creditors of the insolvent might petition and procure the assignment of his effects, and thus dissolve the attachment. It is not necessary in this case to determine what would have

been the decision of the court, if the creditors had petitioned the master within the twenty-four hours after the rendition of such judgment ; but it is sufficient for the determination of this case, to say that no application was made to the ·master until two days after the rising of the court, which took place on the 15th of February, and after the rights of the judgment creditors were perfected. This, we are aware, would not be a sufficient answer, if the judgments were, in the language of the counsel, a fraud upon the statute, and a wrongful evasion of it, prejudicial to the just rights of creditors. But we know of no rule of law which prohibits a debtor to confess his debt, when sued, or of being defaulted at an early stage of the term for want of an appearance ; and certainly, prior to *St.* 1841, *c.* 124, if by so doing he thus preferred a favored creditor, it was not a fraud upon the statute, but one of the privileges of a debtor ; a relic of the old system of preferences then remaining, which was so long allowed in this Commonwealth, and which is not entirely abolished. And it may be therefore said that the debtor had power to use this privilege, rather from a defect in the statute, than from practising a fraud upon it.

*Plaintiffs nonsuit*